UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHAMBERLAIN, LLC                                                                                    PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:14CV-448-S

HILLS LAND & DEVELOPMENT CO.                                                           DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on motion of third-party defendants Norton Commons, LLC and Traditional Town, LLC (collectively, "Norton Commons"), for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).[1]

The facts underlying this suit are as follows[2]:

In the course of developing Norton Commons Planned Village Development in Jefferson County, Kentucky, Norton Commons was required by the governing land use authorities to acquire an easement over a piece of adjacent property for the construction and maintenance of a retention basin and associated wetlands in order to obtain the land use approvals necessary to complete their own development. (Third-Party Complaint ("TPC"), ¶¶ 17, 19; DN 22-1, p. 1-2). To that end,

---

[1] The counts for which judgment on the pleadings is sought, tortious interference with contract (Count Four), civil conspiracy (Count Five), and punitive damages (Count Six), are brought against Norton Commons, Traditional Town, and Wolf Pen Preservation Association, Inc. ("WPPA"). The present motion is brought by Norton Commons and Traditional Town only. These entities are, in turn, referred to frequently in the third-party complaint "Background" section as "Norton Commons and/or Traditional Town." Though the claims are asserted against Traditional Town in addition to Norton Commons, it does not appear that any acts were committed by that entity beyond or separate and apart from those allegedly committed by Norton Commons. As the parties treat the entities as one for purposes of this motion, the court will accord them the same treatment.

[2] We have referred to some general facts recited in one or more of the briefs. None of these facts are pertinent to or relied upon in deciding the motion for judgment on the pleadings. Rather, these few facts are included solely to offer a more complete picture of what underlies this case.

Norton Commons obtained a 165,291 square foot variable drainage easement (the "easement") over property owned by plaintiff, Chamberlain, LLC in 2004. This easement continues to encumber the Chamberlain property. (TPC, ¶18). It appears undisputed that the retention basin and associated wetlands were "required as binding commitments and conditions of approval of the Norton Commons Master Plan by the Jefferson County Planning Commission and Jefferson County Commissioner." (DN 22-1, p.2, n. 2; TPC, ¶¶ 19, 20, 22, 23).

In August, 2010, Chamberlain entered into a real estate purchase agreement ("REPA") with developer Hills Land & Development Co. ("Hills") to sell the property adjacent to the Norton Commons development, including the portion of the property encumbered by the easement. Pursuant to the sales agreement, Hills deposited $25,000.00 in escrow simultaneously with the execution of the agreement. TPC, ¶¶ 24, 25, 31). Hills filed a proposed development plan which revealed an intention to alter the boundaries of the retention basin and to build impervious parking areas within the boundaries of the easement. (DN 22-1, p. 2).

In 2011, Norton Commons filed suit against Hills, Chamberlain, and Louisville and Jefferson County Metropolitan Sewer District to enjoin Hills from making the proposed alterations within the easement. That action remains pending in the Jefferson Circuit Court. (TPC, ¶¶ 33, 34).

Hills has been unable to resolve the land use issues and consummate the sale. TPC, ¶ 36. Chamberlain filed the complaint in this case in the Jefferson Circuit Court against Hills seeking a declaration that it may exercise its right to terminate the agreement as a result of Hills' failure to purchase the property within a reasonable time (Count I), and a finding that Hills failure to purchase the property within a reasonable time constitutes a default under the sales agreement, entitling Chamberlain to the deposit as liquidated damages (Count II). Hills removed the action to this court

under our diversity jurisdiction, and filed a counterclaim against Chamberlain and third-party complaint against Norton Commons, Traditional Town and WPPA.

This court issued an order that Hills show cause why the matter should not be remanded as improperly removed. In reviewing the notice of removal, the court noted that one ground for removal - the purchase price of the real property - was irrelevant to a determination of the amount in controversy:

> The purchase price of the real property is wholly irrelevant to the determination of the amount in controversy in this case, as Chamberlain seeks only to terminate the REPA rather than enforce it. Compl., ¶¶ 14; 18; Prayer, ¶ 1. Rather, Chamberlain seeks only the $25,000.00 deposit as liquidated damages. Compl., ¶ 21; Prayer, ¶ 2; REPA, ¶ 3. Even the Counterclaim, which we do not consider for purposes of this evaluation, which seeks specific performance[,] does not seek a judgment requiring Chamberlain to convey the property. Rather, it seeks an order that Chamberlain perform under the REPA upon Hills' attainment of all conditions precedent. DN 4, p. 14, ¶ 65. Thus Hills seeks nothing more than a declaration that it is, essentially, not out of the game with respect to the REPA, and damages allegedly caused by delay.

DN 29, pp. 3-4.

Chamberlain has asserted a breach of contract claim against Hills, stating that "Hills' failure to perform within a reasonable time its obligation to purchase the Property is a default of its obligations under the Agreement...Chamberlain is entitled to the Deposit as liquidated damages." DN 1-3, p. 3, ¶¶ 20, 21. The term "Deposit" is defined within the agreement: "Hills delivered to an escrow agent certain money ("Deposit") to be held and applied according to the terms of the Agreement." DN 1-3, p. 2, ¶ 5. The parties agree that Hills paid $25,000.00 into escrow at the time of the execution of the agreement, although the amount is not mentioned in Chamberlain's complaint.

The court initially thought that this was the end of the matter, as the "Deposit" identified in the complaint is a sum well below the court's $75,000.00 jurisdictional limit. However, upon consideration of the precise wording of the REPA provision, the court concludes that the "Deposit" may have increased to $100,000.00 by operation of the provision, thus exceeding the jurisdictional limit.

Paragraph 3(a) of the REPA addressing payment of the purchase price states, in pertinent part:

> Upon execution of this Agreement by Buyer and Seller, Buyer will deliver to Sterling Land Title Agency, Inc. ("Escrow Agent") $25,000 (the "Deposit", which includes interest accruing thereon)...The Deposit will be credited towards the Purchase Price. However, if the Closing (as defined in Section 10) does not occur, the Deposit shall be paid to the party entitled to receive it. If Buyer fails to terminate this Agreement on or before Satisfaction Date 2, then within five days thereafter Buyer will deliver to Escrow Agent the sum of $75,000 to be added to and become a part of the Deposit As [sic] if originally a part thereof."

DN 1-3, REPA, p. 1, ¶ 3.

The last sentence of Paragraph 3(a) operates to automatically require a $75,000.00 increase to the deposit in the event of the buyer's failure to terminate the agreement on or before Satisfaction Date 2, defined as the satisfaction of the conditions contained in Subsection 4(b) within one year after the date the buyer receives the Title Commitment and Survey. (REPA, p. 1, ¶ 4). As noted by Hills, it is undisputed that more than four years has passed since the execution of the REPA, and that Chamberlain has asserted that Hills has breached the REPA by failing to perform under the agreement within a reasonable time. While Chamberlain's complaint alleges that certain monies were delivered to an escrow agent as "Deposit," the Complaint also states that the Deposit is to be held and applied according to the terms of the REPA. The REPA provision enhancing the deposit

to $100,000.00 states that the additional sum is to be added to and becomes a part of the Deposit, as if originally a part thereof.

As noted in *Heil v. Auto Club Property-Casualty Insurance Company*, No. 1:13-CV-193, 2014 WL 4700002 (W.D.Ky. Sept. 19, 2014), "Although a defendant seeking removal bears the burden of proving by a preponderance of the evidence that the amount-in-controversy requirement is satisfied, this standard 'does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement.' *Hayes v. Equitable Energy Res.Co.,* 266 F.3d 560, 572 (6th Cir. 2001)( quoting *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 158 (6th Cir. 1993))." Thus, while not conclusively established from the allegations of the complaint, the court concludes that Hills has established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold of $75,000.00.

Hills has alleged that Norton Commons tortiously interfered with the REPA.[3] Norton Commons seeks judgment on the claim, urging that Hills' own factual allegations establish that Norton Commons did not tortiously interfere, but rather that it took action to enforce its legal rights in the easement.[4]

For purposes of a motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may only be granted if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-*

---

[3] This claim is asserted against Henderson and WPPA also. The motion for judgment on the pleadings was made only by Norton Commons.

[4] Hills interjects an assertion that maybe Norton Commons is not the proper party to enforce the easement. Thus, it contends that it referred to Norton Commons' "alleged rights" in the TPC. However, there is no suggestion in the TPC that Norton Commons is not the proper party to enforce rights under the easement.

*Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008), *quoting JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

> The Restatement (Second) of Torts § 766 (1979) states that
>
> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.
>
> As noted in *National Collegiate Athletic Association v. Horning*, 754 S.W.2d 855, 858 (Ky.

1988), "[Kentucky] law is clear that a party may not recover under the theory presented in the absence of proof that the opposing party 'improperly' interfered with his...contractual relation."

> In order to prevail, the plaintiff must "show malice or some significantly wrong conduct." *Id.* at 534. However, if malice or wrongful conduct is established, the wrongdoer "may escape liability by showing that he acted in good faith to assert a legally protected interest of his own." *NCAA v. Hornung*, 754 S.W.2d 855, 858 (KY 1988). Because it is a defense as opposed to an element of the tort, "the party asserting a right to protect his own interest bears the burden of proving his defense." *Id.*

*Louisville Metro Housing Authority Development Corporation v. Commonwealth Security, Inc.*, No. 2012-CA-000073-MR, 2013 WL 3237480 (Ky.App. June 11, 2014) *quoting Hornung, supra.*.

As noted earlier in the opinion, the TPC alleges that Norton Commons owns the property adjacent to the property which is the subject of the REPA (TPC, ¶ 17), that it obtained a 165,291 square foot variable drainage easement that encumbers the property which is the subject of the REPA (TPC, ¶ 18), and that the easement was required by the governing land use authorities in order for Norton Commons to obtain the land use approvals necessary to complete its development (TPC, ¶ 19). The TPC alleges that Chamberlain and/or Henderson knew prior to entering into the REPA that the transfer of the property for Hills' intended use could result in the breach or default of various

land use laws, regulations, and agreements including the easement. (TPC, ¶ 20). The TPC alleges that Chamberlain and/or Henderson knew that Norton Commons might "vigorously enforce" their rights under the easement through litigation. (TPC, ¶ 22). The TPC alleges that Norton Commons did, in fact, file an action in the Jefferson Circuit Court to permanently enjoin Hills from developing the property as originally planned. (TPC, ¶¶ 33, 34).

As the allegations of the TPC charge that Norton Commons sought to enforce its rights under the easement, Hills' claim for tortious interference fails as a matter of law. "[S]ome element of ill will is seldom absent from intentional interference; and if the defendant has a legitimate interest to protect, the addition of a spite motive usually is not regarded as sufficient to result in liability." *Hornung*, 754 S.W.2d at 859. The third-party claim against Norton Commons for tortious interference with contract will be dismissed.

Hills also asserts a claim for civil conspiracy alleging that Henderson, Norton Commons, and WPPA, without a legitimate business purpose, collectively took concerted action by commencing the Norton Commons litigation to prevent Hills from consummating its agreement with Chamberlain. (TPC, ¶¶ 104, 105). As a civil conspiracy consists of "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act," *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995), the same basis for the dismissal of the tortious interference claim applies here. The TPC alleges that Norton Commons filed suit to enforce its rights under the easement. Therefore, taking the allegations of the TPC as true, the civil conspiracy claim is also without merit.

Additionally, the claim is time-barred. A claim for civil conspiracy must be brought within one year after the cause of action accrued. KRS 413.140(c). The state court suit was filed by

Norton Commons in 2011. The TPC does not allege any overt acts in furtherance of the conspiracy within one year prior to the July, 2014 filing date of the TPC. Hills urges that Chamberlain's filing of the present action should be considered as an acting continuing in furtherance of the charged conspiracy. However, as pointed out by Norton Commons, there is no civil conspiracy claim against Chamberlain. Thus Chamberlain's actions have no bearing on the timeliness of the civil conspiracy claim. This count will also be dismissed.

As there are no substantive claims remaining against Norton Commons, the claim for punitive damages must be dismissed.

A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

February 6, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**